Robert V. Prongay (#270796)
(rprongay@glancylaw.com)
(info@glancylaw.com)
Natalie S. Pang (#305886)
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150

Michael A. Rose
(MR@hachroselaw.com)
Kathryn A. Hettler
(KH@hrsclaw.com)
HACH ROSE SCHIRRIPA &
CHEVERIE LLP
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: (212) 213-8311

Larry Nussbaum
(larry@nlginjury.com)
NUSSBAUM LAW GROUP P.C.
76 Canal Street, 4th Floor
Boston, Massachusetts 02114
Telephone: (857) 245-9853

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TIFFANY WELLS,<br><br>                    Plaintiff,<br><br>        v.<br><br>MELISSA V. JEFFERSON,<br><br>                    Defendant. | Case No.:<br><br>COMPLAINT FOR:<br>1)   Libel;<br>2)   Intentional Infliction of Emotional Distress; and<br>3)   False Light Invasion of Privacy<br><br>JURY TRIAL DEMANDED |

Plaintiff Tiffany Wells ("Plaintiff" or "Ms. Wells"), by and through her undersigned attorneys, complaining of Defendant Melissa V. Jefferson a/k/a Lizzo ("Defendant" or "Lizzo"), brings this action for libel, intentional infliction of emotional distress, and false light invasion of privacy. Upon information and belief, Plaintiff hereby alleges as follows:

## I. JURISDICTION AND VENUE

1. This Court has diversity question jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, and Plaintiff and Defendant are residents of different states.

2. Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant resides in this judicial district.

## II. PARTIES

### *Plaintiff*

3. Plaintiff Tiffany Wells is a 27-year-old female. Ms. Wells began working as courier for Postmates in approximately March 2019. Following the events described herein, Ms. Wells ceased working for Postmates on or about September 17, 2019. During all relevant times hereinafter mentioned, Ms. Wells was and still is a resident of the State of Massachusetts, County of Suffolk.

### *Defendant*

4. Defendant Melissa V. Jefferson, known professionally as "Lizzo," is an American singer, songwriter, rapper, and actress. In 2019, Lizzo attained mainstream success with the release of her third studio album. To date, Lizzo has over one million followers on Twitter and approximately 5.5 million followers on Instagram. Lizzo is a resident of the State of California, County of Los Angeles.

## III. SUBSTANTIVE ALLEGATIONS

### *Plaintiff's Background*

5. Upon graduating high school, Ms. Wells immediately joined the work force. From age eighteen until present day, Ms. Wells has held various customer

1

service-related jobs. Indeed, Ms. Wells is a very perseverant and hard-working individual, at times, working three different jobs at once. Throughout her employment, Ms. Wells received various recognitions, including an award for quality of service.

6. With regards to her employment, Ms. Wells amicably left each position she held. Either Ms. Wells left to seek a better opportunity, or her position was eliminated altogether. In fact, Ms. Wells began working as courier for Postmates in approximately March 2019 after she was laid off from her previous job. Following the events described herein, Ms. Wells ceased working for Postmates on or about September 17, 2019.

***What is Postmates?***

7. Postmates is an American logistics company that works by connecting customers with couriers (i.e. a Postmate) who make deliveries for a huge variety of local businesses. Using the Postmates application ("app"), one can place an order for items ranging from food, alcohol, groceries, and more. A Postmate receives an order notification on their mobile device, then picks up the order and delivers it directly to the customer within minutes.

8. When the Postmate arrives at the delivery address, the customer receives a notification of their arrival in their Postmates app and a push notification[1] is sent to the customer's device. According to Postmates' policies, if a Postmate is unable to locate the customer, or is having difficulties entering the customer's building, the Postmate will call or text the customer at the number the customer provided at checkout.[2] A Postmate will wait at the delivery address and attempt to

---

[1] A push notification is an automated message sent by an application to a user when the application is not open.

[2] Postmates. *What should I do if I missed my delivery?* https://support.postmates.com/buyer/articles/115002481648-article-What-should-I-do-if-I-missed-my-delivery- (last accessed September 27, 2019).

get ahold of the customer for of *five minutes*.[3]  If the Postmate is unable to get in touch with the customer after *five minutes*, the Postmate is to leave the location and move on to their next delivery.[4]

9. A Postmate is paid for each completed pickup and delivery.  In addition, a Postmate receives compensation for each minute spent waiting in stores, as well as for the distance he or she has to travel between the pickup and drop-off locations.  A Postmate also retains 100% of any customer tips received.

*Plaintiff's Work as a Postmate and the September 16, 2019 Postmates Delivery*

10. As mentioned above, Plaintiff began working as a courier for Postmates in approximately March 2019.[5]  From the time that Plaintiff began working as a Postmate until the time she was forced to quit, Plaintiff made approximately 450 deliveries for Postmates.

11. On or about September 16, 2019, at approximately 7:14 p.m. Plaintiff received a delivery notification on her cellphone.  The notification indicated that a food order was to be picked up from Luke's Lobster and delivered to a Bonnie V. at 200 Stuart Street in Boston, Massachusetts, which happens to be the location of the Revere Hotel.

12. Plaintiff proceeded to the Luke's Lobster to pick up the order and promptly headed to 200 Stuart Street to complete the delivery.

13. When Plaintiff arrived at 200 Stuart Street (i.e. the Revere Hotel), she was unable to locate the customer.  Although the customer had ordered delivery to the Revere Hotel, the customer did not provide a hotel room number.

---

[3] *Id.*

[4] *Id.*

[5] At or about this time, Plaintiff also began working as a courier for other food delivery services, including Uber EATS and Caviar.

3

14. After canvassing the entrance to the hotel and the hotel lobby, Plaintiff, *per Postmates policy*, attempted to contact the customer via telephone. Indeed, Plaintiff made multiple calls to the phone number that the customer provided to Postmates, *yet each call went unanswered.*

15. In a *further attempt to contact the customer* and complete the delivery, Plaintiff spoke with the hotel's front desk agents. She inquired if anyone with the customer's name was staying at the hotel. After she was informed that there was in fact no Bonnie V. staying at the hotel, Plaintiff went back outside where she lingered for five minutes before finally departing – *as per Postmates policy.*

16. In fact, from the time Plaintiff arrived at 200 Stuart Street from the time she departed, Plaintiff spent more than ten minutes trying to contact the customer. Indeed, Plaintiff went above and beyond Postmates' requisite five-minute waiting period policy.

### *The Aftermath of the September 16, 2019 Postmates Delivery*

17. The next day, September 17, 2019, Plaintiff was barraged with text messages and phone calls from friends and family members informing her that Lizzo had posted Plaintiff's name and photograph on Twitter, stating *"Hey @Postmates this girl Tiffany W. stole my food she lucky I don't fight no more."* A copy of Lizzo's original tweet is attached hereto as **Exhibit A**.[6]

18. Plaintiff instantly put two and two together and realized that Lizzo must have been the customer that she was unable to deliver the food to the night before (i.e. Bonnie V.).

19. Plaintiff immediately logged in to her own Twitter account to confirm what her family and friends had been telling her. As a relatively private person, Plaintiff was shocked to find out that Lizzo had plastered her face on the Internet for

---

[6] Upon information and belief, Lizzo's original September 16, 2019 tweet is posted in Pacific Standard Time ("PST").

4

all to see. Plaintiff was even more shocked to find out that her picture was accompanied by text accusing her of being a thief.

20. Plaintiff continued to search Twitter and the Internet. She discovered that Lizzo's tweet had been replied to by a plethora of individuals, including some of Lizzo's purported loyal fans who threatened Plaintiff with acts of violence. One particular individual replied to Lizzo's tweet with the following, *"[m]e pulling up to Tiffany's house and stomping on her ass bc she deprived my baby lizzo of her food,"* yet another individual replied, *"catch me in the streets tIFFANY."* The threatening tweets are attached hereto as **Exhibit B**.

21. Plaintiff also discovered that Lizzo had replied to a comment to her original tweet. Lizzo's reply stated, *"[n]aw the front desk told me she walked in, clocked it as delivered, then walked out with food in hand. Her phone never rang, Postmates couldn't contact her either. She clearly knew what she was doing and I just don't want someone else to get they shit stole too…."* Lizzo's reply tweet is attached hereto as **Exhibit C**.

22. Because of Lizzo's tweets and in light of Lizzo's influence and popularity, Plaintiff became fearful that someone may recognize her if she continued to deliver for Postmates. Given that Plaintiff was already the recipient of direct threats of violence, Plaintiff also feared for her physical safety. Unsure as to what an individual or group of individuals may do to cause her harm if she were to be recognized in public, Plaintiff was scared to leave her house and as a result was forced to stop delivering as a courier altogether – *directly affecting her ability to earn a living.*[7]

23. Although Lizzo's tweet was eventually removed from Twitter and Lizzo tweeted out an apology to Plaintiff, attached hereto as **Exhibit D**, as various

---

[7] In addition to Postmates, Plaintiff ceased working for Uber Eats and Caviar.

5

1  media outlets pointed out, the damage had already been done. Lizzo's tweet had
2  been retweeted, replied to, and highly circulated by various mainstream media
3  organizations, including but not limited to *People*, *Rolling Stone* and *TMZ*. To date,
4  the *TMZ* article alone has 777 comments and has been shared 5,600 times on
5  Facebook.[8]

6  24. Moreover, as confirmed by *TMZ*, who reached out to Postmates for
7  comment with regards to Lizzo's tweet, **Postmates denied any wrongdoing by**
8  **Plaintiff**. A Postmates spokesperson informed *TMZ* that "[a]s soon as Lizzo
9  reached out, we looked into the matter and quickly resolved the issue."[9] TMZ was
10 further told that "the company determined [Plaintiff] waited at least the required 5
11 minutes and wasn't able to reach the customer, so she moved on like she's supposed
12 to do."[10]

13 25. Notably, in her apology, Lizzo admitted to "putting [Plaintiff] on
14 blast,"[11] and that by doing so, Lizzo "put [Plaintiff] in danger." *See* Exhibit D.

15 **IV.  CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**LIBEL**

18 26. Plaintiff repeats and re-alleges by reference each and every allegation
19 contained in the above stated paragraphs, and incorporate the same herein as though
20 fully set forth.

---

[8] TMZ, *Lizzo's Postmates Driver Says She's Not a Food Thief and Now She's Terrified*, https://www.tmz.com/2019/09/23/lizzo-postmates-driver-humiliated-scared-thief-defamation/ (last accessed September 27, 2019).

[9] *Id.*

[10] *Id.*

[11] According to various Internet sources, "putting someone on blast" means putting them in a situation that is either embarrassing or compromises their reputation.

6

27. As reference above, and as attached hereto as Exhibits A and C, on or about September 16, 2019, Lizzo made and published to third-parties via Twitter the following false statements of or concerning Plaintiff:

    a. "Hey @Postmates this girl Tiffany W. stole my food she lucky I don't fight no more," and

    b. "Naw the front desk told me she walked in, clocked it as delivered, then walked out with food in hand.  Her phone never rang, Postmates couldn't contact her either.  She clearly knew what she was doing and I just don't want someone else to get they shit stole too…."

28. The above false statements are defamatory and are libelous on their face as they adversely affect Plaintiff's reputation, expose Plaintiff to hatred, contempt, ridicule and obloquy, and have a tendency to injure Plaintiff in her occupation.

29. Lizzo's publication of the false statements of or concerning Plaintiff to third-parties included, but was not limited to Lizzo's roughly one million Twitter followers.

30. By tweeting false statements about Plaintiff, Lizzo knew or should have known that her false and defamatory statements would be republished over and over by third-parties.  Indeed, Lizzo's tweet was picked up and republished by various main stream media organizations, including but not limited to People, Rolling Stone and TMZ.

31. Lizzo lacked reasonable grounds for any belief in the truth of her statements and acted negligently in failing to determine the true facts because Lizzo tweeted the false statement of or concerning Plaintiff prior to or without first contacting Postmates in order to inquire as to the status of her delivery.

32. Lizzo acted with actual malice and reckless disregard for the truth when she tweeted the false statements of or concerning Plaintiff because Plaintiff made

7

multiple, albeit unsuccessful, phone calls to the phone number associated with Lizzo's Postmates order. Moreover, Lizzo received a notification of Plaintiff's arrival in her Postmates app and a push notification was sent to Lizzo's mobile device.

33. Lizzo's false statements constitute libel per se, as the statements accuse Plaintiff of the commission of a crime involving moral turpitude (i.e. theft). Lizzo's false statements also impute to Plaintiff an unfitness to perform the duties associated with being a courier. Thus, Lizzo's false statements of or concerning Plaintiff also prejudice Plaintiff in her profession or trade.

34. As a direct result of Lizzo's actions, Plaintiff has suffered and continues to suffer substantial damage and loss, including, but not limited to, the loss future earnings, pain and suffering, emotional distress and trauma, fear of physical safety, insult, anguish, stress and anxiety, public ridicule, humiliation, indignity, damage and injury to her personal and professional reputation, and other incidental and consequential damages and expenses.

35. As a result of Lizzo's conduct, Plaintiff is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

36. Plaintiff repeats and re-alleges by reference each and every allegation contained in the above stated paragraphs, and incorporate the same herein as though fully set forth.

37. By tweeting Plaintiff's image, along with the defamatory statements and threatening comments of or concerning Plaintiff, Lizzo intended to inflict or recklessly disregarded for the probability of inflicting, emotional distress upon Plaintiff.

38. Lizzo's conduct was extreme and outrageous in that she used her celebrity to publicly defame, disparage and threaten a private individual (i.e. Plaintiff), to roughly one million Twitter followers.

39. Lizzo's conduct was also extreme and outrageous in that she lacked reasonable grounds for any belief in the truth of her statements and acted negligently in failing to determine the true facts because Lizzo tweeted the false statement of or concerning Plaintiff prior to or without first contacting Postmates in order to inquire as to the status of her delivery.

40. Lizzo acted with actual malice and reckless disregard for the truth when she tweeted the false statements of or concerning Plaintiff because Plaintiff made multiple, albeit unsuccessful, phone calls to the phone number associated with Lizzo's Postmates order. Moreover, Lizzo received a notification of Plaintiff's arrival in her Postmates app and a push notification was sent to Lizzo's mobile device.

41. As result of Lizzo's extreme and outrageous conduct, Plaintiff suffered severe anxiety and emotional distress. Plaintiff, due to direct threats on her personal safety, was afraid for her well-being. Plaintiff was scared to leave her house and as a result, Plaintiff was forced to stop delivering as a courier altogether – directly affecting her ability to earn a living.

42. Lizzo's actions offend against generally accepted standards of decency tolerated in a civil society. Any reasonable person directly threatened on a global platform by a celebrity and her avid followers would have suffered emotional distress and would have similarly reacted.

43. As a direct result of Lizzo's actions, Plaintiff has suffered and continues to suffer substantial damage and loss, including, but not limited to, the loss future earnings, pain and suffering, emotional distress and trauma, fear of physical safety, insult, anguish, stress and anxiety, public ridicule, humiliation,

indignity, damage and injury to her personal and professional reputation, and other incidental and consequential damages and expenses.

44. As a result of Lizzo's conduct, Plaintiff is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## THIRD CAUSE OF ACTION
## FALSE LIGHT INVASION OF PRIVACY

45. Plaintiff repeats and re-alleges by reference each and every allegation contained in the above stated paragraphs, and incorporate the same herein as though fully set forth.

46. Lizzo, without Plaintiff's consent, publicly disclosed Plaintiff's image, along with false statements accusing Plaintiff of being a thief, to her roughly one million Twitter followers.

47. Lizzo published these statements with knowledge that they were false or with reckless disregard for their falsity.

48. Indeed, Lizzo lacked reasonable grounds for any belief in the truth of her statements and acted negligently in failing to determine the true facts because Lizzo tweeted the false statement of or concerning Plaintiff prior to or without first contacting Postmates in order to inquire as to the status of her delivery.

49. Lizzo acted with actual malice and reckless disregard for the truth when she tweeted the false statements of or concerning Plaintiff because Plaintiff made multiple, albeit unsuccessful, phone calls to the phone number associated with Lizzo's Postmates order. Moreover, Lizzo received a notification of Plaintiff's arrival in her Postmates app and a push notification was sent to Lizzo's mobile device.

50. By publishing the false statements, Lizzo unreasonable, substantially and seriously interfered with Plaintiff's right to privacy, as such statements placed Plaintiff in a false light.

51. The false light in which Plaintiff was painted is highly offensive and objectional to both Plaintiff and to a reasonable person of ordinary sensibilities.

52. As a direct result of Lizzo's actions, Plaintiff has suffered and continues to suffer substantial damage and loss, including, but not limited to, the loss future earnings, pain and suffering, emotional distress and trauma, fear of physical safety, insult, anguish, stress and anxiety, public ridicule, humiliation, indignity, damage and injury to her personal and professional reputation, and other incidental and consequential damages and expenses.

53. As a result of Lizzo's conduct, Plaintiff is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief: compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all of the triable issues of fact and damages stated herein.

Dated: November 15, 2019          Respectfully submitted,

GLANCY PRONGAY & MURRAY LLP

By: *s/ Robert V. Prongay*
Robert V. Prongay
Natalie S. Pang
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email: info@glancylaw.com

1  
2  
3  
4  
5  
6  
7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28  

Michael A. Rose
(MR@hachroselaw.com)
Kathryn A. Hettler
(KH@hrsclaw.com)
HACH ROSE SCHIRRIPA &
CHEVERIE LLP
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: (212) 213-8311

Larry Nussbaum
(larry@nlginjury.com)
NUSSBAUM LAW GROUP P.C.
76 Canal Street, 4th Floor
Boston, Massachusetts 02114
Telephone: (857) 245-9853

*Counsel for Plaintiff*